UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER RAPALO,<br><br>    Plaintiff,<br><br>v.<br><br>S. LOPEZ, et al.,<br><br>    Defendants. | 1:11-cv-01695-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING:<br><br>(1) PLAINTIFF'S MOTION FOR THE COURT TO APPOINT A NEUTRAL EXPERT FOR SUMMARY JUDGMENT BE DENIED;<br><br>(2) PLAINTIFF'S MOTION TO STRIKE BE DENIED; AND<br><br>(3) DEFENDANT SCHAEFER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF Nos. 93, 100)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**Findings and Recommendations**

## I.    Introduction

Plaintiff Walter Rapalo ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, against Defendants Lopez, S. Schaefer (erroneously sued as Schaffer) and Manasrah for deliberate indifference to serious medical needs in violation of the Eighth Amendment to the United States Constitution.

///

///

Currently before the court is Defendant Schaefer's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56.[1] (ECF No. 93.) Plaintiff opposed the motion (ECF Nos. 110, 111, 112, 113), and Defendant Schaefer replied (ECF No. 118). Plaintiff also submitted a surreply. (ECF No. 121).

Also before the court is Plaintiff's motion for appointment of a neutral expert for the purposes of summary judgment and to strike the declarations of Dr. Bruce Barnett submitted in support of the motions for summary judgment filed by Defendant Schaefer and by Defendants Lopez and Manasrah.[2] (ECF No. 100). Defendants Lopez and Manasrah opposed the motion on February 8, 2016, and Defendant Schaefer joined the opposition. (ECF Nos. 101 and 102). Plaintiff replied on February 22, 2016. (ECF No. 106).

The motions are deemed submitted. Local Rule 230(l).

**II.     Plaintiff's Surreply**

As noted above, Defendant Schaefer filed a motion for summary judgment, Plaintiff responded and Defendant replied. Thereafter, on April 15, 2016, Plaintiff filed a response to Defendant's reply. (ECF No. 121.) This court's Local Rules provide for a motion, an opposition, and a reply. Local Rule 230(1). Neither the Local Rules nor the Federal Rules of Civil Procedure provide the right to file a response to a reply. *See*, *e.g.*, *Wyatt v. Zanchi*, No. 1:09-cv-01242 BAM PC, 2011 WL 5838438, at *5 (E.D. Cal. Nov. 21, 2011). In this case, the court neither requested a response to Defendant Schaefer's reply nor granted a request on Plaintiff's behalf to file such a response. Accordingly, the court will recommend that Plaintiff's response to Defendant Schaefer's reply be stricken from the record and not considered for purposes of summary judgment.

///

///

///

---

[1]     Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 93); *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988; *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

[2]     The motion for summary judgment filed by Defendants Lopez and Manasrah will be addressed by separate order.

### III. Plaintiff's Motion for Appointment of Neutral Expert

#### A. Parties' Arguments

Plaintiff requests that the court appoint a back specialist as a neutral expert, contending that his motion is based "on fairness that the Court, if presented with an expert by a party and the opposing party is indigent and without counsel to have their own opposing expert." (ECF No. 100 at 2). In support of this request, Plaintiff contends that a neutral expert will benefit the court by establishing the applicable standard of care for the treatment of the complex issues of compressed sciatic nerve palsy and lumbar disc disease. Plaintiff also contends that a neutral expert will avoid a wholly one-sided presentation of the issues. (*Id*.)

Defendants Lopez and Manasrah counter that the request for appointment of a neutral expert should be denied because the facts alleged in this case are not so complex that the trier of fact could not make a fair determination without the aid of a court-appointed expert witness. Defendants assert that the primary issue is whether Plaintiff was functioning well while under their care, making any back surgery ordered by medical staff at another prison unnecessary. Defendants contend that this issue is neither complex nor unusual, noting that it is the type of issue that arises in a large number of cases before the court in which inmates have alleged deliberate indifference to medical needs. (ECF No. 101). Defendant Schaefer has joined these arguments. (ECF No. 102).

In his reply, Plaintiff contends that Defendants have found the issues in this case complex enough that they need their own expert, Dr. Barnett. However, Plaintiff contends that Dr. Barnett is not a specialist in the field of neurology. Plaintiff believes that a neurologist is necessary to determine if there was a delay in care and treatment (or denial of treatment) that would have caused Plaintiff's pain and further risk of injury. Plaintiff reasserts that he is not seeking an expert to benefit him, but is instead seeking a neutral expert to benefit the court and to avoid a one-sided presentation. (ECF No. 106).

#### B. Legal Standard

The court has the discretion to appoint an expert pursuant to Rule 706(a). In relevant part, Rule 706 states that "[o]n a party's motion or on its own, the court may order the parties to show

cause why expert witnesses should not be appointed . . . ." Fed. R. Evid. 706(a); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). Pursuant to Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. While the court has the discretion to appoint an expert and to apportion costs, including apportionment of costs to one side, Fed. R. Evid. 706; *Ford ex rel. Ford v. Long Beach Unified School Dist.*, 291 F.3d 1086, 1090 (9th Cir. 2002); *Walker*, 180 F.3d at 1071, where the cost would likely be apportioned to the government, the court should exercise caution. *Manriquez v. Huchins*, 2012 WL 5880431, at *12 (E.D. Cal. 2012).

**C. Analysis**

Although Plaintiff repeatedly asserts in his motion that the appointment of a neutral expert is to benefit the court, it is apparent that Plaintiff seeks expert testimony to assist him in defeating summary judgment by having his own "opposing expert." (ECF No. 100 at 2). However, Rule 706 does not contemplate court appointment and compensation of an expert witness as an advocate for Plaintiff. *Manriquez*, 2012 WL 5880431 at *14 (purpose of a court-appointed expert is to assist the trier of fact, not to serve as an advocate); *Brooks v. Tate*, 2013 WL 4049043, *2 (E.D. Cal. Aug. 7, 2013) (avoiding bias or otherwise assisting one party is not the purpose of Rule 706); *Gorrell v. Sneath*, 2013 WL 3357646, *1-2 (E.D. Cal. Jul. 3, 2013) (purpose of court-appointed expert is to assist the trier of fact, not to serve as an advocate for a particular party). Further, the crux of Plaintiff's constitutional claim is that Defendants Schaefer, Lopez and Manasrah were deliberately indifferent to Plaintiff's serious medical needs. A trier of fact does not require a medical expert to make such a determination. *See, e.g., Montanez v. Gonzalez*, 2013 WL 6048132, *1 (E.D. Cal. Nov. 14, 2013); *Wilds v. Gines*, 2011 WL 737616, *4 (N.D. Cal. Feb. 23, 2011); *Lopez v. Scribner*, 2008 WL 551177, *1 (E.D. Cal. Feb. 27, 2008). Accordingly, the court will recommend that Plaintiff's motion for the appointment of a medical expert be denied.

IV.     **Plaintiff's Motion to Strike the Declaration of Dr. Bruce Barnett**

   A.  **Parties' Arguments**

Plaintiff moves to strike the declarations of Dr. Bruce Barnett submitted in support of the motions for summary judgment filed by Defendant Schaefer and by Defendants Lopez and Manasrah.  In his moving papers, Plaintiff contends that because Dr. Barnett is an employee of the California Department of Corrections and Rehabilitation ("CDCR") he will be biased and will protect the actions of his co-workers, Defendants Schaefer, Lopez and Manasrah. Additionally, Plaintiff faults Dr. Barnett for failing to declare that he can be unbiased and for failing to declare how many times he has given expert opinions in federal court in compliance with Federal Rule of Civil Procedure 26(a)(2)(B)(v).  Plaintiff also suggests that Dr. Barnett could be a defendant in this action because he reportedly sets CDCR standards for the treatment and care of inmates and guides prison healthcare providers. (ECF No. 100).

Defendants Lopez and Manasrah counter that Dr. Barnett's testimony as an expert is authorized by the Federal Rules of Evidence.  In particular, Defendants contend that Dr. Barnett's opinion is based on his review of Plaintiff's medical records, along with Plaintiff's complaint and deposition.  Defendants further contend that because Dr. Barnett's opinion is "biased" in their favor is not sufficient grounds to strike the declaration.  As a final matter, Defendants argue that, in the absence of a scheduling order deadline, they are not required to make any expert disclosures until 90 days before trial.  (ECF No. 101).  Defendant Schaefer has joined these arguments.  (ECF No. 102).

In reply, Plaintiff reasserts his concerns regarding Dr. Barnett's apparent bias in favor of Defendants.  Plaintiff also argues that the failure to comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a) is neither justified nor harmless.  (ECF No. 106).

   B.  **Legal Standard**

The Federal Rules of Evidence authorize the opinion testimony of an expert witness who has the requisite "knowledge, skill, experience, training or education" to form a specialized opinion. Fed. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would

5

reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.

### C. Analysis

Plaintiff's motion to strike the declarations of Dr. Barnett must be denied. Pursuant to the Federal Rules of Evidence, Dr. Barnett's opinion is properly based on his experience and training and his review of the relevant records. In particular, Dr. Barnett has been a licensed physician and surgeon in California since 1979. He reviewed the operative complaint, Plaintiff's medical records, and Plaintiff's deposition, and offered an independent medical opinion on the treatment Plaintiff received for his back from Dr. Schaefer and other providers while at KVSP. (ECF No. 93-5, Declaration of Dr. Bruce Barnett ("Barnett Decl.") ¶¶ 1, 8, 9 and ECF No. 93-6, Exs. A and B to Barnett Decl.; ECF No. 94-5, Declaration of Barnett in Support of Defendants Lopez and Manasrah's Motion for Summary Judgment ¶¶ 1, 8, 9 and Ex. A). Although Dr. Barnett's opinion, as Defendants' expert witness, is by its very nature biased in favor of Defendants, this goes to the weight of the evidence and not its admissibility.

Insofar as Plaintiff objects to Dr. Barnett's testimony based on the disclosure requirements of Federal Rule of Civil Procedure 26, this objection must be overruled. Rule 26(a) requires a party to disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). Such disclosure must be made at the time and in the sequence ordered by the court, and in the absence of a stipulation or court order, that disclosure must be made at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D). In this case, the court has not set a deadline for the disclosure of expert witnesses and no trial date has been set. Therefore, Defendants were not required to disclose the identity of their expert witness relied upon in support of the motions for summary judgment and were not required to provide a written report detailing all other cases in which Dr. Barnett testified as an expert.

Accordingly, the Court will recommend that Plaintiff's motion to strike the declarations of Dr. Bruce Barnett be denied.

### V. Defendant's Motion for Summary Judgment

Defendant Schaefer argues that (1) Plaintiff has failed to present sufficient evidence to

establish a genuine issue of material fact as to his claim of deliberate indifference against Defendant Schaefer; and (2) Defendant Schaefer is entitled to qualified immunity. For the reasons explained below, the court recommends granting Defendant Schaefer's motion for summary judgment.

### A. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.    Disputed and Undisputed Material Facts**[3]

1.    Plaintiff Walter Rapalo is a prison inmate confined by the California Department of Corrections and Rehabilitation ("CDCR") at Valley State Prison where he has resided since October of 2012.  (ECF No. 93-3, Ex. C, Deposition of Walter Rapalo ("Rapalo Depo.") at 7:9-15.)

2.    Prior to VSP, Plaintiff was housed at Tehachapi (CCI) from February 2012 to

---

[3] These undisputed facts are derived from Defendant Schaefer's Statement of Uncontroverted Facts and Conclusions of Law in in Support of Motion for Summary Judgment.  (ECF No. 93-2).  Unless otherwise indicated, only disputed material facts are omitted from this statement and relevant objections are overruled.

1  October of 2012. Before that, Plaintiff was housed at Kern Valley State Prison (KVSP) from
2  January 2009 to February of 2012. Plaintiff had been transferred to KVSP from Florence
3  Corrections Center (FCC) in Florence, Arizona where he was housed from September 2008 to
4  January 2009.  (*Id.* at 7:16-8:17.)

5        3.      Plaintiff has a long history of low back pain, dating back to at least 2005.
6  (Compl. ¶ 14.)

7        4.      Dr. Schaefer was employed as a physician at Kern Valley State Prison ("KVSP")
8  from 2008 until September 14, 2013.  (ECF No. 93-4, Declaration of Dr. S. Schaefer ("Schaefer
9  Decl.") ¶ 1.)

10       5.      From 2008 through 2009, Dr. Schaefer was a full-time Primary Care Provider
11 ("PCP") at C-Yard, where Walter Rapalo was housed. In 2010, she was no longer a full time
12 PCP at C-yard, instead she was scheduled part time at KVSP's Triage and Treatment Center.
13 (*Id.* at ¶ 4.)

14       6.      Plaintiff alleges that Dr. Schaefer was deliberately indifferent to his back injury,
15 pain and need for treatment and as a result, plaintiff suffered from increased pain and damage to
16 his low back.  (Compl. ¶¶ 27-58.)

17       7.      Plaintiff's specific complaints are that defendants, including Dr. Schaefer, did not
18 prescribe sufficient medication to treat his pain, did not provide appropriate or complete
19 diagnostic testing, and delayed necessary surgery.  (Compl. ¶¶ 14-87.)

20       8.      Plaintiff was satisfied with Dr. Schaefer's treatment of his gastrointestinal
21 complaints and none of his allegations of deliberate indifference relate to Dr. Schaefer's
22 treatment of those complaints.  (Rapalo Depo. at 18:2-13; Compl. ¶¶ 27-58.)

23       9.      Dr. Schaefer provided care and treatment to Plaintiff on approximately seven
24 occasions during his time at KVSP.  (Shaefer Decl. ¶ 7.)

25       Plaintiff objects to this statement as inconclusive to the type and care of treatment, as
26 vague and as unrelated to any allegations in the complaint.  Plaintiff's objections are overruled.
27 This statement, which is undisputed by Plaintiff, is specific as to the number of treatment
28 encounters involving Dr. Schaefer and Plaintiff.  Further, Dr. Schaefer's treatment of Plaintiff is

1  directly relevant to the claim of deliberate indifference to serious medical needs.

2       10.    On March 4, 2009, Dr. Schaefer provided care to Plaintiff for complaints related
3  to his gastrointestinal system. He did not complain of significant back pain or significant activity
4  changes on this occasion nor was surgery discussed.  (*Id.* at ¶ 8 and Ex. A.)

5      Plaintiff attempts to dispute this fact by first arguing that Defendant Schaefer was aware
6  of Plaintiff's return to CDCR for consultation/neurosurgery on his back.  In support of this
7  purported dispute, Plaintiff cites to Dr. Schaefer's response to Plaintiff's interrogatories.
8  However, Plaintiff has not submitted the relevant interrogatory and response.  Absent supporting
9  evidence, Plaintiff fails to raise a genuine issue for trial.

10     Plaintiff next attempts to dispute this fact by arguing that his medical file includes
11 medical requests identifying back problems and statements from Arizona doctors that he needed
12 to return to CDCR for consultation/surgery.  Plaintiff's citation to his medical requests and files
13 is not sufficient to create a genuine issue for trial.  Plaintiff presents no evidence suggesting that
14 on March 4, 2009, he complained to Dr. Schaefer of significant back pain, that surgery was
15 discussed or that Dr. Schaefer did not treat him for his gastrointestinal complaints.  Further, there
16 is no evidence that Dr. Schaefer received or reviewed Plaintiff's medical requests or his medical
17 file at that time.  Plaintiff's assertions that Dr. Schaefer admitted to the contents of his medical
18 requests and records (ECF No. 113 at 11-12, 27) are not sufficient to create a genuine issue for
19 trial.  An admission that certain records state something is not an admission that Dr. Schaefer
20 reviewed these records before or during her treatment of Plaintiff.

21      11.    On June 12, 2009, Dr. Schaefer saw Plaintiff for his continuing gastrointestinal
22 issues, including a positive test for H. pylori, bacteria that can cause chronic stomach
23 inflammation and ulcers. Dr. Schaefer prescribed multiple medications to help rid him of the H.
24 pylori and alleviate his gastrointestinal discomfort and symptoms. At the end of the visit,
25 Plaintiff mentioned his back pain and Defendant Schaefer prescribed a new medication,
26 amitriptyline, to help alleviate it.  (*Id.* at ¶ 9 and Ex. A.)

27     Plaintiff attempts to dispute this fact by first contending that care for his gastrointestinal
28 issue does not prove that proper care was provided for his back.  Plaintiff next contends that Dr.

Schaefer's "acknowledgement" on this date is six months after Plaintiff arrived at KVSP. Plaintiff asserts that six months of medical requests were sent in and many documents from Arizona doctors were in the medical file.

Plaintiff's arguments do not raise a genuine dispute of material fact. First, Plaintiff does not dispute that Dr. Schaefer treated him for gastrointestinal issues on June 12, 2009, and that Dr. Schaefer prescribed medication to help alleviate Plaintiff's report of back pain. Second, and more importantly, the mere existence of medical requests and statements in Plaintiff's medical file are not sufficient to demonstrate (1) that Dr. Schaefer failed to treat Plaintiff's back pain on June 12, 2009; (2) that Dr. Schaefer had knowledge of Plaintiff's "six months of medical requests;" or (3) that Dr. Schaeffer had knowledge of any statements from Arizona doctors contained in a medical file. It cannot be reasonably inferred that simply because certain records may have existed that Dr. Schaefer in fact reviewed or received those records.

12. On October 30, 2009, in response to Plaintiff's appeal no. KVSP-0-09-01763, Dr. Schaefer interviewed Plaintiff to assess whether he needed a back brace to assist with daily activities as he contended in the appeal. Based on her conversation with Plaintiff, she determined that a back brace would be appropriate and granted his request, signing off on the back brace chrono on November 2, 2009. (Schaefer Decl. ¶ 10, Exs. A, B and C.)

13. During medical visits with Dr. Schaefer in 2009, Plaintiff consistently reported that he was exercising and able to do a full physical workout. (Schaefer Decl. ¶ 11.)

Plaintiff attempts to dispute this fact by stating that medical staff at FCC and KVSP told him to exercise and that it was good for his back. Plaintiff further states that Dr. Schaefer also required it, but that this "does not prove the existence of no back problem." (ECF No. 110 at 3). Plaintiff's statements do not raise a genuine dispute of material fact or a genuine issue for trial. Instead, Plaintiff's statements confirm that Plaintiff was exercising.

14. After November 2, 2009, Dr. Schaefer did not see Plaintiff for medical reasons again until July 20, 2010. (Schaefer Decl. ¶ 12.)

Plaintiff disputes this fact, arguing that it is not a basis for exclusion of liability. Plaintiff further argues that several medical requests were sent during that time frame, several of which

were referred to Dr. Schaefer's medical line.  Plaintiff's arguments do not raise a genuine dispute of material fact.  Plaintiff has not presented competent evidence that Dr. Schaefer saw Plaintiff for medical reasons between November 2, 2009, and July 20, 2010.

15. On July 20, 2010, August 9, 2010, and August 24, 2010, Dr. Schaefer provided care to Plaintiff for complaints related to his gastrointestinal system. He did not complain of significant back pain or significant activity changes on these occasions nor was surgery was discussed. (Schaefer Decl. ¶ 13 and Ex. A.)

Plaintiff disputes this fact, arguing that care for his gastrointestinal system does not support proper care for his back.  Plaintiff also argues that several medical requests were sent in for back pain and included requests to see a doctor, some specifically identifying Dr. Schaefer.  Plaintiff also cites to Exhibits and A and G to his declaration in support of his contention that he did tell Dr. Schaefer about his back pain.  According to Exhibit A, which is comprised of excerpts from Plaintiff's deposition, Plaintiff told Dr. Schaefer about his back pain in 2009 and 2010.  (ECF No. 111, Ex. A, pp. 3-4.)  According to Exhibit G, Plaintiff submitted a series of Health Care Services Request Forms in 2009, 2010, 2011, and 2012.  (ECF No. 111, Ex. G.)

Plaintiff's evidence does not raise a genuine issue for trial.  There is no competent evidence from which a jury could conclude that Plaintiff complained directly to Dr. Schaefer of significant back pain on July 20, August 9 or August 24, 2010.  There also is no competent evidence that Dr. Schaefer received or reviewed any of Plaintiff's Health Care Services Request forms.  The mere existence of the request forms is not sufficient to impute knowledge to Dr. Schaeffer.

16. On December 15, 2010, Dr. Schaefer saw Plaintiff primarily for his reports of back pain.  Plaintiff reported that he was unable to complete his usual regimen of physical workouts in light of pain. During prior medical visits, he had expressed that he was exercising and his physical exercise regimen seemed to be important to him. This was one of the factors Dr. Schaefer considered in changing the course of action to take in response to Plaintiff's back pain complaints.  (Schaefer Decl. ¶ 14.)

17. During the December 15, 2010 visit with Dr. Schaefer, Plaintiff stated that he had

12

an earlier MRI, around 2008, and that he wanted back surgery. At the time of the visit, Dr. Schaefer could not locate the earlier record of the MRI in Plaintiff's file so she requested a copy and ordered a new MRI to assess the current condition of Plaintiff's back and provide a basis for determining the best course of treatment. Although Plaintiff was vocal about his pain, there was no objective evidence to substantiate a significant clinical change in his condition during the December 15, 2010 visit. (*Id.* at ¶ 15 and Ex. A.)

18. Dr. Schaefer is not a neurosurgeon and cannot herself perform back surgery, order back surgery, or conclusively evaluate whether a patient is a candidate for back surgery. For a neurosurgeon or other appropriate medical provider to evaluate whether a patient, like Mr. Rapalo, would be a surgical candidate they would at a minimum need an up to date MRI. This was another factor Dr. Schaefer considered in deciding to order an MRI during the December 15, 2010 visit. (*Id.* at ¶ 16.)

19. Dr. Schaefer's notes from this visit express that a current MRI was needed before Plaintiff could be considered a surgical candidate and noted that if Plaintiff was better, he might not need to see neurosurgery anymore. (Ex. A. to Schaefer Decl.)

20. During the December 15, 2010 visit, Dr. Schaefer also advised Mr. Rapalo to continue walking track but to perform only upper body exercises when engaging in exercise. (*Id.* at ¶ 17.)

21. Chronic low back pain is a common complaint, reported by up to 80% of adults in their lifetime, and that best practices favor using the least invasive measures possible to avoid the risks that come with surgery. (ECF No. 93-5, Barnett Decl. ¶ 17.)

22. Surgery is always a risky procedure and is typically only suitable as a final option when all others have been exhausted. (*Id.* at ¶ 12, p. 22-2317, ¶ 17; Schaefer Decl. ¶ 16.)

23. After ordering an MRI of Plaintiff's back on December 10, 2010, Dr. Schaefer never saw Plaintiff again for medical treatment. (Schaefer Decl. ¶ 18.)

24. Prior to the December 15, 2010 visit, Dr. Schaefer had no information that he desired surgery for his back. At no time during the period that she saw Walter Rapalo for medical treatment, did she see an order for back surgery for Mr. Rapalo or have information that

he needed follow up for neurosurgery visits made prior to his transfer to KVSP. She also had no information as to indicate that surgery had been considered necessary in the opinion of a neurosurgeon or by any other healthcare provider. (Schaefer Decl. ¶ 5.)

Plaintiff argues that his medical records from FCC, available to Dr. Schaefer, showed an order for surgery on L5-S1, doctor statements that he needed surgery/consultation and direction from a doctor that he was to let CDCR know that he was transferred because of a disc herniation and needed follow-up with neurosurgery. Plaintiff also argues that his Intake Medical form showed "pending surgery" and he sent in numerous medical requests about his back and the transfer. Plaintiff further argues that Dr. Schaefer's own response to an interrogatory stated that Plaintiff was transferred for consultation. Plaintiff concludes that Dr. Schaefer's statements are not supported by the evidence.

Plaintiff has not raised a genuine issue for trial. According to medical records submitted by Plaintiff, in December 2008, Dr. Michael Hegmann at FCC ordered a neurosurgery consult for Plaintiff's L5-S1 disc herniation. (ECF No. 111, Ex. C to Rapolo Decl.) On January 2, 2009, Dr. Xuong Wilkinson of FCC cleared Plaintiff for transfer, and instructed Plaintiff "to let CDC (California) know that he have [sic] disc. herniation and need f/u with neurosurgery." (*Id.* at Ex. D.) Following his transfer to KVSP, an Initial Health Care Screening form dated January 6, 2009, identified "pending surgery." (*Id*. at Ex. F).

Although the Initial Health Care Screening identified a pending surgery, the medical records from FCC do not contain an order for back surgery. At best, these records reflect only that Plaintiff was referred for a neurosurgery consultation and follow-up. In the absence of an order for surgery, Dr. Schaefer could not have seen such an order or been aware that surgery had been considered necessary in the opinion of a neurosurgeon or by any other healthcare provider. Further, Plaintiff has presented no evidence to suggest that Dr. Schaefer knew that Plaintiff needed follow-up with neurosurgery or that she knew, prior to December 15, 2010, that Plaintiff desired surgery for his back. Plaintiff has not demonstrated that he informed Dr. Schaefer prior to December 15, 2010, that he desired surgery or that he needed follow-up with neurosurgery.

25. Plaintiff informed medical providers at CCI at least as early as May of 2012 that

1  he was transferred before surgery could be ordered. Yet, providers at CCI did not consider
2  Plaintiff as a surgical candidate until September of 2012, approximately seven months into his
3  stay at CCI. (*Id.* at ¶ 12, p. 18.)

4      26.    When back surgery was ordered for Plaintiff, he was warned that it might be
5  ineffective or require further surgery. (*Id.* at ¶ 12, pp. 23-24 and Ex. B.)

6      27.    Plaintiff received surgery in December of 2012. (*Id.* at Ex. B.)

7      28.    Following surgery, Plaintiff continued to voice complaints about back pain to his
8  medical providers.

9      Plaintiff's attempt to dispute this fact is unnecessary. Plaintiff's response to surgery in
10 2012 is immaterial to the issue of whether Dr. Schaefer was deliberately indifferent to a serious
11 medical need.

12     29.    Upon Defendant's request, Dr. Barnett, a graduate of Harvard Medical School
13 who has been a licensed physician and surgeon in California since 1979, reviewed the operative
14 complaint, Plaintiff's medical records, and Plaintiff's deposition, and offered an independent
15 medical opinion on the treatment Plaintiff received for his back from Dr. Schaefer and other
16 providers while at KVSP. (Barnett Decl. ¶¶ 1, 8, 9 and Ex. A.)

17     30.    Dr. Barnett has over thirty years of experience in the fields of family medicine,
18 urgent care, and emergency medicine. His expertise includes treatment of conditions, common
19 and rare, that manifest in the prison population including the management of acute and chronic
20 back pain, sports injuries, orthopedic conditions and chronic pain. He regularly provides
21 treatment and advises other physicians about the treatment of back pain, including medical and
22 surgical treatment options. (*Id.* at ¶¶ 2, 6 and Ex. A.)

23     31.    Dr. Barnett's opinion is that "Defendant Schaefer provided appropriate medical
24 care to Plaintiff that met or exceeded applicable standards of care." (*Id.* at ¶ 11.)

25     32.    Dr. Barnett also opines that Dr. Schaefer's approach was not indifferent but
26 rather, "to have offered Plaintiff surgery when he was not impaired, and to treat him with
27 narcotics despite a history of drug abuse would have been indifferent to his medical condition.
28 (*Id.* at ¶ 18.)

33.     Dr. Barnett believes that surgery will not in fact lead to much improvement for Plaintiff. (*Id.* at ¶ 12, p. 23-24.)

34.     As to the timing of the surgery, Dr. Barnett notes, "there is no evidence earlier surgery would have been appropriate, necessary or helpful." (*Id.* at ¶ 12, p. 22.)

### C. Analysis

#### 1. Plaintiff Has Failed to Present Sufficient Evidence to Establish a Genuine Issue of Material Fact as to his Claim of Deliberate Indifference

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County Ariz.*, 609 F.3d 1011, 1019 (9th Cir.2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, *Jett*, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980), citing *Estelle,* 429 U.S. at 105 06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the

Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989).

According to the undisputed facts, Dr. Schaefer provided treatment to Plaintiff on seven separate occasions following his transfer to KVSP. UMF 9. Of those seven occasions, it is undisputed that Plaintiff complained to Dr. Schaefer of back pain only twice—once on June 12, 2009, and once on December 15, 2010. UMF 11, 16. On June 12, 2009, in response to Plaintiff's complaint of back pain, Dr. Schaefer prescribed amitriptyline. UMF 11. On December 15, 2010, in response to Plaintiff's complaint of back pain and his request for back surgery, Dr. Schaefer ordered a new MRI to assess Plaintiff's current back condition before Plaintiff could be considered a surgical candidate. UMF 16-17, 19. To the extent Plaintiff disagrees with the treatment provided for his back issues on June 12, 2009, and December 15, 2010, such a disagreement is not sufficient to establish deliberate indifference to serious medical needs. *Sanchez*, 891 F.2d at 242.

Additionally, the undisputed facts demonstrate that Dr. Schaefer evaluated Plaintiff in response to his inmate appeal requesting a back brace. In that appeal, Plaintiff did not reference any prior order for back surgery or neurology consult, nor did he request surgery. Rather, Plaintiff sought only a back brace to help with his daily activities and programming. (Ex. B to Schaefer Decl.) Dr. Schaefer responded to that request and issued a chrono for a back brace. (*Id.* at Ex. C.) As Defendant Schaefer granted Plaintiff's request, a reasonable trier of fact could not conclude that she was deliberately indifferent to his complaint of back pain at the time of his inmate appeal.

Further, Defendant Schaefer has presented undisputed expert testimony that the entirety of her treatment of Plaintiff was appropriate and met or exceeded applicable standards of care. UMF 31. Dr. Schaefer also has presented undisputed expert testimony that there is no evidence

back surgery prior to December 2012 would have been appropriate, necessary or helpful.  UMF 34.

Contrary to Plaintiff's suggestion that Dr. Schaefer should have complied with a prior order for back surgery from FCC, Plaintiff's medical records do not support an inference that back surgery was ordered by any of his healthcare providers at FCC. According to medical records submitted by Plaintiff, in December 2008, Dr. Hegmann ordered only a neurosurgery consult for Plaintiff's L5-S1 disc herniation.  (ECF No. 111, Ex. C to Rapalo Decl.).  On January 2, 2009, Dr. Wilkinson cleared Plaintiff for transfer, and instructed Plaintiff "to let CDC (California) know that he have [sic] disc. herniation and need f/u with neurosurgery." (*Id.* at Ex. D).  Although an Initial Health Care Screening form dated January 6, 2009, identified "pending surgery," (Id. at Ex. F), the treatment records from FCC do not include an order for or scheduling of back surgery.  Plaintiff also has not presented any evidence to support an inference that Dr. Schaefer received or reviewed any of his cited Inmate Health Care Request forms complaining of back pain or that Dr. Schaefer had any knowledge of a previously ordered neurosurgery consult before she ordered the MRI in 2010.[4]  Dr. Schaefer did not see Plaintiff for treatment after ordering the MRI.  UMF 23.

Plaintiff also attempts to argue that because his disc intrusion increased between the MRI ordered by Dr. Schaefer and a subsequent MRI in 2012, Dr. Schaefer should have ordered surgery. (ECF No. 113 at 21.)  Plaintiff's argument is not sufficient to support an inference that he required surgery prior to 2010 or during the period of Dr. Schaefer's treatment.  Instead, it suggests that his condition may have worsened after Dr. Schaefer concluded her treatment of Plaintiff.  Plaintiff also argues that Dr. Schaefer was deliberately indifferent because she failed to

---

[4] While not cited by the parties, Plaintiff's deposition testimony appears to confirm that Dr. Schaefer did not have the benefit of his Arizona file until she ordered the MRI in December 2010.  In relevant part, Plaintiff testified:

Q. What happened when you told her about the back pain?  What did she do?

A. From when I arrived to Delano from Arizona the first time that I saw her she said she did not have my file from Arizona.  So that's the way it was and she did not believe me until I got my review from Arizona and about twenty pages were shown to her.  From that point forward then she sent me to get me a new MRI.  That's when she send me to the physical therapy.

(ECF No. 111, Ex. A, Declaration of Walter Rapalo, 14:8-16.)

alter his treatment after Plaintiff's alleged suicide attempt, which he partly attributes to chronic back pain. (ECF No. 113 at 15.) This argument is not persuasive. There is no evidence supporting the cause of any alleged suicide attempt or that Dr. Schaefer knew of the alleged suicide attempt during her treatment of Plaintiff.

When considering the undisputed events detailed above, a reasonable jury could not conclude that Defendant Schaefer was deliberately indifferent to a serious medical need in violation of the Eighth Amendment. Therefore, the court recommends granting Defendant Schaefer's motion for summary judgment on that basis.

### 3. Defendant Schaeffer Is Entitled To Qualified Immunity

Defendant Schaeffer also moves for summary judgment in this case on the basis of qualified immunity.

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 94, 201 (2001)).

As noted above, the court finds no deprivation of a constitutional right. Therefore, Defendant Schaefer is entitled to qualified immunity, and the court will recommend that summary judgment also be granted to Defendant Schaefer on the ground of qualified immunity.

### III. Conclusion and Recommendation

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's unauthorized surreply (ECF No. 121) be stricken from the record;
2. Plaintiff's motion for the court to appoint a neutral expert for summary judgment (ECF No. 100) be denied;

1      3.      Plaintiff's motion to strike the declarations of Dr. Bruce Barnett (ECF No. 100) be denied; and

    4.      Defendant Schaefer's motion for summary judgment (ECF No. 93) be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 3, 2017**          /s/ Barbara A. McAuliffe  
                                                               UNITED STATES MAGISTRATE JUDGE